IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-00270-PAB-KLM

GERALDINE GARCIA,

    Plaintiff,

v.

HARRISON SCHOOL DISTRICT NO. 2,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on defendant's Motion for Summary Judgment [Docket No. 42]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case arises out of plaintiff's employment with defendant Harrison School District No. 2 as principal of Monterey Elementary School. Plaintiff was hired as the principal of Monterey for the 2014-2015 school year. Docket No. 42 at 3, ¶ 1. On August 14, 2014, plaintiff fell from the bleachers at school and suffered injuries to her back and hips for which she filed a worker's compensation claim. *Id.*, ¶ 4. Plaintiff's one-year contract was subsequently renewed for the 2015-2016 school year. *Id.* at 5, ¶ 18.

In August 2015, plaintiff learned that she had the rheumatoid arthritis factor. *Id.*, ¶ 20; Docket No. 44 at 5, ¶ 20; Docket No. 47 at 2, ¶ 20. She was formally diagnosed

---

[1]The following facts are undisputed unless otherwise indicated.

with rheumatoid arthritis in January 2016. Docket No. 42 at 5, ¶ 20. On August 25, 2015, plaintiff was taken from the school in an ambulance because she was lightheaded, feeling nauseous, having heart palpitations, and experiencing high blood pressure. Docket No. 44 at 10, ¶ 11. Plaintiff did not know the cause of her symptoms. Docket No. 42 at 6, ¶ 23. On August 26 and August 27, 2015, plaintiff was absent from work. Docket No. 42 at 6, ¶ 24; Docket No. 44 at 6, ¶ 24. After returning to work on August 28, 2015, plaintiff took a second leave of absence from August 31, 2015 through September 4, 2015 for which she used paid medical leave. Docket No. 42 at 6, ¶¶ 25, 27; Docket No. 44 at 7, ¶ 27.[2] Although plaintiff never requested FMLA leave, Docket No. 42 at 7, ¶ 32, she gave defendant a doctor's note stating that she was "unable to work" between August 31 and September 4, 2015. Docket No. 44 at 9, ¶ 2.[3] Upon returning to work on September 8, 2015, plaintiff was placed on paid administrative leave, effective immediately, and informed that the superintendent – Andre Spencer – would recommend to the board that plaintiff not be rehired for the

---

[2]Although plaintiff denies defendant's factual assertion in ¶ 25, she does not dispute that she returned to work on August 28. See Docket No. 44 at 7, ¶ 25. Additionally, defendant's factual statement contains a typographical error. Defendant states that plaintiff returned to work on August 28, 2016. Docket No. 42 at 6, ¶ 25. However, this date does not accord with defendant's assertion that plaintiff's final employment contract ended on June 30, 2016. See id. at 8, ¶ 37. Defendant admits elsewhere in the briefing that it misstated the year in which certain events relevant to the lawsuit took place. See Docket No. 47 at 2, ¶ 20 (admitting that plaintiff was diagnosed with rheumatoid arthritis factor in August 2015, not August 2016 as stated in summary judgment motion).

[3]Defendant states that "[p]laintiff's newly disclosed doctor's note dated September 3, 2015, could not possibly have been provided in advance of its creation." Docket No. 47 at 5, ¶ 2. It was, however, apparently delivered before her return from leave.

2

following academic year. Docket No. 42 at 8, ¶ 36; Docket No. 44 at 9, ¶ 6; Docket No. 42-12.[4] Plaintiff remained on paid administrative leave through the end of her employment contract, which expired on June 30, 2016. Docket No. 42 at 8, ¶ 37.[5]

On January 27, 2017, plaintiff filed this lawsuit asserting claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and retaliation under the ADA and FMLA. *See* Docket No. 1. On March 28, 2017, defendant moved to dismiss the lawsuit under Fed. R. Civ. P. 12(b)(6). Docket No. 12. While that motion was pending, the parties stipulated to the dismissal of plaintiff's ADA discrimination claim with prejudice. Docket No. 41. On January 30, 2018, defendant moved for summary judgment on plaintiff's remaining claims. Docket No. 42.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*

---

[4]The paragraphs containing these factual assertions are "denied" on other grounds for purposes of summary judgment. *See* Docket No. 44 at 8, ¶ 36 (denying statement that Mr. Spencer made decision to place plaintiff on paid administrative leave on ground that Mr. Spencer relied on recommendation from Edwin Saunders); Docket No. 47 at 6, ¶ 6 (disputing legal determination that plaintiff was "effectively terminated" when she was placed on administrative leave but not denying fact that plaintiff was placed on leave). Accordingly, there is no genuine dispute regarding the facts stated above.

[5]Plaintiff asserts that she did not receive the full benefits of her contract while out on paid administrative leave but does not deny that her contract ended on June 30, 2016. Docket 44 at 9, ¶ 37.

3

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When considering a motion for summary judgment, a court must view the

evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  ADA Retaliation

Plaintiff asserts that defendant retaliated against her in violation of the ADA by placing her on paid administrative leave and declining to renew her employment after she took two medical leaves of absence in August 2015.  *See* Docket No. 44 at 11-12, 15.

The ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  Where, as in this case, a plaintiff relies on circumstantial evidence to demonstrate retaliation, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007).  Under that framework, a plaintiff must first allege sufficient facts to state a prima facie case of retaliation.  *Id.*  Once that case is established, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the employer satisfies this burden, a plaintiff must show that the employer's proffered justification is a "pretext masking discriminatory animus."  *Id.* (internal quotation marks omitted).

To establish a prima facie case of retaliation under the ADA, a plaintiff must

show that: (1) she "engaged in protected activity"; (2) she "was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) "there was a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1187 (10th Cir. 2016) (internal quotation marks and brackets omitted).

"Activity protected from retaliation under the ADA includes not only bringing or participating in formal actions to enforce ADA rights, but also informal activity such as requesting an accommodation for a disability." *Fieni v. Franciscan Care Ctr.*, 2011 WL 4543996, at *7 (E.D. Pa. Sept. 30, 2011) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)); *see also Foster*, 830 F.3d at 1188 (recognizing "that a request for accommodation can constitute protected activity supporting a retaliation claim"). Moreover, "it is well-settled that a request for leave may lead to a 'reasonable' accommodation" by "allow[ing] an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1051 (10th Cir. 2017); *see also Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kan.*, 691 F.3d 1211, 1217-18 (10th Cir. 2012) (stating that "a brief leave of absence for medical treatment or recovery can be a reasonable accommodation"). While a plaintiff asserting a retaliation claim based on the act of requesting or taking leave as a reasonable accommodation need not show that she had an actual disability to establish a prima facie case, she must demonstrate that she had a "reasonable, good faith belief" that she was engaging in protected activity. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001). The Court finds that

6

plaintiff has not met this requirement.

The ADA's implementing regulations define "disability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g). A "physical or mental impairment" includes "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." *Id.*, § 1630.2(h).

Plaintiff argues that she had a reasonable, good faith belief that she was entitled to leave as an accommodation under the ADA because she "was experiencing medical issues in August of 2015," was ultimately diagnosed with rheumatoid arthritis, and "believed it was her right to go on leave for diagnosis and treatment of these conditions." Docket No. 44 at 13. As defendant points out, however, plaintiff testified that "the first time the disability ever came into even [her] head" was when she returned to work on August 28, 2015 after her first leave of absence. *See* Docket No. 44-8 at 22, 210:7-10; *Espinoza v. Dep't of Corrs.*, 509 F. App'x 724, 729 (10th Cir. 2013) (unpublished) (stating that an employee must show that he "*subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices"). Moreover, plaintiff has not shown that she had an objectively reasonable belief that she was entitled to leave as an accommodation for a disability. *See id.* (stating that employee is obligated to show that his belief that employer was engaged in unlawful

7

employment practices was "*objectively* reasonable in light of the facts and record presented"). Specifically, plaintiff fails to cite any evidence demonstrating that the medical issues prompting her two leave requests substantially limited one or more major life activities. 29 C.F.R. § 1630.2(g). Although plaintiff argues that she was later diagnosed with rheumatoid arthritis, which she testified rendered her unable to work by October/November 2015, *see* Docket No. 44 at 13; Docket No. 42-1 at 11, 52:8-10, plaintiff has presented no evidence linking her rheumatoid arthritis to the nausea, dizziness, and heart palpitations that prompted her need for medical leave in August 2015. Additionally, when asked how having rheumatoid arthritis factor affected her ability to perform her duties as principal, plaintiff stated only that she "tired" and "not feeling [her]self," which caused her to experience anxiety and "internal confusion" about what was wrong with her. Docket No. 42-1 at 2, 14:24-15:2. While plaintiff further testified that she "felt incapacitated . . . as far as [her] mind was cloudy," *id.*, 15:11-13, there is no evidence that any of these symptoms impaired her ability to work or to engage in other activities. *Compare Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 740 (10th Cir. 2013) (unpublished) (finding that plaintiff had a reasonable, good faith belief that he was disabled where there was evidence indicating that plaintiff was limited in his ability to lift, squat, kneel, crawl, climb, and work at heights, and that those limitations affected his ability to do household activities); *Nagle v. Mink*, No. 10-cv-01935-PAB-MEH, 2012 WL 3150520, at *10 (D. Colo. Aug. 2, 2012) (finding that plaintiff had "established that he had a good faith belief that his diabetes was a physical impairment and that defendants violated the ADA by failing to accommodate him"

8

where plaintiff "attributed his work performance problems to fatigue and memory loss" and "believed that his fatigue and memory loss were a direct result of his diabetes").

Plaintiff's general reference to "medical issues" is also unavailing. In the cited portions of her deposition testimony, plaintiff discusses her injuries from a fall at work in August 2014 as well as one or two instances in which she felt lightheaded and nauseous prior to her visit to the emergency room on August 25, 2015. *See* Docket No. 44-8 at 6, 33:2-22, 35:5-25, 36:1-39:25. As with the rheumatoid arthritis, however, there is no evidence that plaintiff's August 2014 injuries are related to her leaves of absence in August 2015, *see* Docket No. 44-8 at 6, 36:5-9 (indicating that medical issues in August 2015 were "more related to fatigue and heart palpitations"), and plaintiff has cited no authority for the proposition that one or two bouts of lightheadedness and nausea are sufficient to support a reasonable belief that plaintiff was suffering from a physical impairment that substantially limited one or more major life activities.

Because plaintiff has not demonstrated a reasonable, good faith belief that she was suffering from a disability, she cannot show that she engaged in "protected activity" under the ADA by taking leave in August 2015. Defendant is therefore entitled to summary judgment on plaintiff's ADA retaliation claim.

**B. FMLA Interference**

Plaintiff asserts that defendant interfered with her FMLA rights by failing to reinstate her to her position after her medical leaves of absence in August 2015. *See* Docket No. 44 at 18-20.

9

The FMLA entitles eligible employees to "up to twelve weeks of unpaid leave . . . for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006); *see also* 29 U.S.C. § 2612(a)(1)(D) (providing that an eligible employee may take leave for a "serious health condition that makes the employee unable to perform the functions of [his or her] position"). An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the Act. 29 U.S.C. § 2615(a)(1). To prevail on a claim for FMLA interference, a plaintiff must show "(1) that he or she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his or her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Metzler*, 464 F.3d at 1180.

To demonstrate entitlement to FMLA leave, an employee must show that she had a "serious health condition" that made her "unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.113.

As an initial matter, plaintiff does not address the statutory and regulatory requirements for demonstrating a "serious health condition." She argues only that she was entitled to take FMLA leave because "[h]eart conditions are specifically mentioned in the legislative history of the FMLA as an example of a serious health condition

10

covered by the statute, as well as Plaintiff's actual underlying condition, severe arthritis." Docket No. 44 at 19 (internal quotation marks omitted). However, plaintiff has not presented evidence that she was ever diagnosed with a heart condition or that her rheumatoid arthritis caused the medical issues that prompted the leaves of absence for which she is claiming FMLA protection. Plaintiff testified that she went to the hospital on August 25, 2015 because she "was lightheaded," "feeling nauseous," and having "heart palpitations." Docket No. 42-1 at 7, 33:16-19. She further testified that her leave of absence on August 31, 2015 "was designed to try to figure out what was wrong with [her]" following her visit to the hospital for nausea and dizziness. *Id.* at 7, 34:3-16. There is no evidence connecting these events – and plaintiff's symptoms of nausea, dizziness, and heart palpitations – with plaintiff's rheumatoid arthritis, which, according to plaintiff's testimony, caused only pain and fatigue. *See* Docket No. 42-1 at 2, 11, 14:18-15:15 (discussing ways in which rheumatoid arthritis affected plaintiff's ability to work), 52:8-13 (testifying that pain and fatigue became unbearable in October/November 2015); Docket No. 44-8 at 1, 12:13-24 (discussing symptoms of rheumatoid arthritis). Accordingly, plaintiff has not shown that she took leave in August 2015 "because of" her rheumatoid arthritis. *See Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 657 (10th Cir. 2014) (unpublished) (finding that plaintiff failed to demonstrate entitlement to FMLA leave where she "did not present sufficient evidence that her treatment was due to a chronic serious health condition – i.e., that her severe chest pain on June 5-6 was related to the shoulder injury she claim[ed was] a 'chronic condition'").

Even applying the regulatory definition of "serious health condition" to the facts in

this case, plaintiff cannot show that she was entitled to FMLA leave. The FMLA and its accompanying regulations define "serious health condition" to include conditions requiring either "inpatient care" or "continuing treatment" by a health care provider. *See* 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.113. There is no evidence that plaintiff had a condition requiring "inpatient care" – defined as "an overnight stay in a hospital, hospice, or residential medical care facility," 29 C.F.R. § 825.114 – because she testified that she was never admitted to the hospital on August 25, 2015 and was discharged that same afternoon. *See* Docket No. 42-1 at 15, 167:1-13. Accordingly, plaintiff can only withstand summary judgment on her FMLA interference claim if the facts demonstrate the existence of an illness, injury, or condition warranting "continuing treatment."

There are two categories of conditions requiring "continuing treatment" that are potentially relevant in this case: chronic conditions and those involving "incapacity and treatment." *See* 29 C.F.R. § 825.115(a), (c). A "chronic serious health condition" is one that "[r]equires periodic visits (defined as at least twice a year) for treatment by a health care provider . . . [, c]ontinues over an extended period of time . . . [,] and [m]ay cause episodic rather than a continuing period of incapacity." *Id.*, § 825.115(c). Plaintiff testified that she experienced nausea and dizziness two or three times in August 2015. *See* Docket No. 42-1 at 7-8, 36:10-38:24. However, there is no evidence that these symptoms persisted over an extended period of time or required periodic visits for treatment by a health care provider. Moreover, although plaintiff's rheumatoid arthritis might constitute a "chronic condition," there is no evidence that plaintiff's nausea,

12

lightheadedness, and heart palpitations were caused by rheumatoid arthritis. The evidence therefore does not give rise to a genuine dispute of fact as to whether plaintiff took leave for a chronic health condition.

Plaintiff also cannot show that she had a condition involving "incapacity and treatment." *See* 29 C.F.R. § 825.115(a). To demonstrate a serious health condition pursuant to this definition, plaintiff must provide evidence of

> [a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) [t]reatment two or more times, within 30 days of the first day of incapacity . . . by a health care provider . . . ; or (2) [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a). Federal regulations define "incapacity" as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

Plaintiff bases her FMLA interference claim on the two leaves of absence that she took on August 25, 2015 and August 31, 2015. The first leave of absence does not constitute a "period of incapacity of more than three consecutive, full calendar days" because plaintiff left work during the day on August 25, 2015 and returned, less than three full days later, on August 28, 2015. *See* Docket No. 42 at 6, ¶¶ 23-25; *see also* 73 Fed. Reg. 67934, 67947 (Nov. 17, 2008) (explaining that addition of "full" to regulation was meant to clarify that test for incapacity "cannot be met by partial days").

The second leave of absence also does not satisfy the "incapacity and treatment" requirements for "continuing treatment." Other than her testimony that she did not "feel well," Docket No. 44-8 at 19, 186:10-12, 187:19, plaintiff has not presented

13

any evidence that her medical symptoms rendered her unable to work between August 31, 2015 and September 4, 2015. The only evidence of plaintiff's incapacity during this period is her testimony that she went to see her primary care physician on September 3, 2015 and a doctor's note stating that plaintiff was "unable to work" between August 31, 2015 and September 4, 2015. *See* Docket No. 42-1 at 7, 34:9-12. While plaintiff may be considered incapacitated during the time it took her to meet with her primary care physician, *see* 29 C.F.R. § 825.113(b) (defining incapacity to include inability to work due to treatment for serious health condition); *id.*, § 825.113(c) (defining "treatment" to include "examinations to determine if a serious health condition exists and evaluations of the condition"), plaintiff cannot demonstrate three consecutive days of incapacity based on one treatment visit alone. The doctor's note stating that plaintiff was "unable to work" between August 31 and September 4, 2015 is also insufficient. The note does not elaborate on plaintiff's actual symptoms during that period, and other courts have concluded that a doctor's note excusing an employee from work without providing further details regarding the employee's symptoms and/or ability to work is insufficient to create a genuine dispute of fact as to the employee's entitlement to FMLA leave. *See, e.g.*, *Lackey v. Jackson Cty., Tenn.*, 104 F. App'x 483, 489 n.6 (6th Cir. 2004) (unpublished) (finding that district court did not err in dismissing as irrelevant three "ambiguous" doctor's notes that excused plaintiff from work but did not indicate that plaintiff was incapacitated); *Jude v. Hitachi Automotive Sys. Am., Inc.*, 2016 WL 3976651, at *3 (E.D. Ky. July 22, 2016) (finding that, although doctor's "excuses tend to bolster a claim of incapacity when viewed in conjunction with examination and treatment notes, they are not alone sufficient to establish a right to FMLA protection").

14

*But see Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 633 n.13 (E.D. Pa. 2017) (finding that doctor's note that directed plaintiff to "refrain from working" for a three-day period could "be read as evidence that [plaintiff] was incapacitated for the requisite period").

Even assuming that the doctor's note in this case is sufficient to create a genuine dispute of fact as to incapacity, plaintiff has not demonstrated that she received treatment two or more times within thirty days of the first day of incapacity or was prescribed a regimen of continuing treatment. *See* 29 C.F.R. § 825.115(a).[6] As to the former requirement, plaintiff went to the emergency room on August 25, 2015 and had an appointment with her primary care provider on September 3, 2015. Although both visits could qualify as treatment, the Department of Labor has indicated that the relevant 30-day window for treatment "begins with the first day of incapacity." 73 Fed. Reg. at 67948; *see also Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 794 (10th Cir. 2010) (noting that court's "review of an agency's interpretation of its own regulations is 'substantially deferential'"). Under this interpretation, the emergency room visit on August 25, 2015 does not count toward the two requisite treatment visits because plaintiff's leave of absence beginning on August 25, 2015 does not qualify as a "period of incapacity of more than three consecutive, full calendar days." 29 C.F.R. § 825.115(a). Plaintiff went back to work on August 28, 2015. Accordingly, because plaintiff has presented evidence of only one treatment visit after August 31, 2015 – the

---

[6]There is no evidence that plaintiff was prescribed a regimen of continuing treatment, which may include "a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen)." 29 C.F.R. § 825.113(c).

first day of her three-day period of incapacity – that related to her symptoms of dizziness, nausea, and heart palpitations, she has failed to demonstrate a three-day period of incapacity followed by "[t]reatment two or more times, within 30 days of the first day of incapacity . . . by a health care provider." 29 C.F.R. § 825.115(a).[7]

Because plaintiff has failed to demonstrate that she was entitled to FMLA leave for a "serious health condition," the Court will grant summary judgment in favor of defendant on plaintiff's FMLA interference claim.[8]

### C. FMLA Retaliation

To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that: "(1) she engaged in a protected activity; (2) [her employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler*, 464 F.3d at 1171. With regard to the first element, the act of taking leave for a serious health condition constitutes a protected activity under the FMLA. *See id.*

Defendant argues that plaintiff's claim fails because she was not entitled to

---

[7]Plaintiff indicated in an affidavit that she told Mr. Saunders that she had follow-up medical appointments "on September 3, 2015 with [her] personal physician and another to include an appointment with a cardiologist." Docket No. 44-2 at 2, ¶ 11. However, plaintiff has presented no evidence that she actually met with a cardiologist within 30 days of the first day of her incapacity.

[8]To the extent that plaintiff's arguments could be read as an assertion that defendant deterred her from taking additional leave, *see* Docket No. 44 at 18 (arguing that the fact that plaintiff "was prevented from exercising her rights is a paradigmatic violation" of the FMLA), plaintiff has not cited any evidence that she requested or intended to take additional leave for her medical issues. *See* Docket No. 42-1 at 5, 25:18-26:8 (testifying that plaintiff did not request additional leave after September 4, 2015).

FMLA leave. Docket No. 42 at 16. Plaintiff responds that, had she "been allowed to go through the certification process, she would have been certified as having a serious health condition under the FMLA." Docket No. 44 at 19. The Court has already rejected plaintiff's argument in the context of her FMLA interference claim and concluded that plaintiff did not take leave as the result of a serious health condition in August 2015. Accordingly, defendant is entitled to summary judgment on plaintiff's FMLA retaliation claim.[9]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 42] is **GRANTED**. It is further

**ORDERED** that Defendant's Motion to Dismiss [Docket No. 12] is **DENIED** as moot. It is further

**ORDERED** that the complaint [Docket No. 1] is **DISMISSED**. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court. It is further

---

[9]The Tenth Circuit has indicated that the question of whether an employee must actually be entitled to FMLA leave to assert an FMLA retaliation claim is "very much an open question in this circuit." *Wilkins v. Packerware Corp.*, 260 F. App'x 98, 103 (10th Cir. 2008) (unpublished). However, in *Wilkins*, the court also noted that Tenth Circuit precedent may "be read to prefigure the conclusion that the lawful taking of FMLA leave is a prerequisite to a retaliation claim." *Id.* In any event, the Court need not resolve the issue. Because the parties assume that plaintiff must demonstrate actual entitlement to prevail on her FMLA retaliation claim – and plaintiff makes no argument for the application of a lower, good faith standard – the Court will proceed under the same assumption.

**ORDERED** that this case is closed.

DATED September 13, 2018.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge